## ATTORNEY GENERAL *vs.* JAMAICA POND AQUEDUCT CORPORATION.

Suffolk.  Nov. 18, 19, 1880; Nov. 15, 16, 1881. — Sept. 8, 1882.  W. ALLEN & C. ALLEN, JJ., absent.

An information in equity, in the name of the attorney general, will lie against a quasi public corporation doing and contemplating acts which are *ultra vires* and illegal, the necessary effects of which are not only to impair the rights of the public in the use of one of the great ponds of the Commonwealth for the purposes of fishing and boating, but to create a nuisance by lowering the pond and exposing upon its shores slime, mud and offensive vegetation detrimental to the public health.

Under the St. of 1868, c. 182, authorizing the corporation therein named, for the purpose of better supplying fresh water and of saving and restraining the water that might percolate from a certain great pond into another pond named, in land owned by the corporation, to take, hold or purchase any land near or adjoining said land, and to enlarge the last-named pond and to raise a dam on said land, and providing that the water of said pond should never be drawn down lower than a certain depth, except for the purpose of repairing the dam or clearing out the pond, the corporation has no right to sink wells on the land so taken, for the purpose of intercepting the underground currents as a source of water supply; and such acts are *ultra vires* and illegal.

MORTON, C. J. This information in equity alleges that Jamaica Pond is one of the great ponds of the Commonwealth; that the defendant, by its charter and other statutes, was authorized to draw water from the pond for the purposes of its incorporation, provided it did not reduce the level of the pond below a certain limit referred to in the statutes; that by the St. of 1868, c. 182, the corporation was further authorized, for the purpose of better supplying fresh water and of saving and restraining the water that might percolate from Jamaica Pond into what was formerly known as Spring Pond, to take, hold or purchase certain land near Spring Pond, and to enlarge Spring Pond and to raise a dam on said land; that said corporation, under the St. of 1868, took a certain tract of land of the Brookline Land Company; that it is now digging upon the land so taken a large well as a source of water supply, and is erecting a building, and proposes to establish extensive machinery in connection with said well, for the purpose of taking water from said well and distributing it through the pipes of the corporation; that the corporation has no legal right to use the land taken for these purposes, or to dig wells or draw from wells as a source of water supply; and that the necessary effect of sinking the well and drawing water from it will be to lower the water in Jamaica Pond below the limit fixed as aforesaid, to impair the rights of the public in the use of the pond for fishing, boating and other lawful purposes, and to create and expose upon the shores of said pond a large quantity of slime, mud and offensive vegetation very detrimental to the public health.

The defendant has demurred to the information; and the first ground taken is, that it does not state a case which is within the equity jurisdiction of the court. Assuming, for the purposes of this question, that the defendant has no right or authority to sink wells for the purpose of obtaining a supply of water, the information presents a case where a quasi public corporation is doing and contemplating acts which are *ultra vires* and illegal, the necessary effects of which are not only to impair the rights of the public in the use of one of the great ponds for the purposes of fishing and boating, but to create a nuisance by lowering the pond and exposing upon its shores slime, mud and offensive vegetation detrimental to the public health.

The cases are numerous in which it has been held that the attorney general may maintain an information in equity to restrain a corporation, exercising the right of eminent domain under a power delegated to it by the Legislature, from any abuse or perversion of the powers, which may create a public nuisance or injuriously affect or endanger the public interests. *Agar* v. *Regent's Canal Co.* Coop. *temp.* Eldon, 77. *Attorney General* v. *Great Northern Railway*, 1 Dr. & Sm. 154. *Attorney General* v. *Mid-Kent Railway*, L. R. 3 Ch. 100. *Attorney General* v. *Leeds Corporation*, L. R. 5 Ch. 583. *Attorney General* v. *Great Eastern Railway*, 11 Ch. D. 449. *Attorney General* v. *Great Northern Railway*, 4 DeG. & Sm. 75. *Attorney General* v. *Cohoes Co.* 6 Paige, 133.

The information in this case alleges not only that the defendant is doing acts which are *ultra vires* and an abuse of the power granted it by the Legislature, but also that the necessary effect of such acts will be to create a public nuisance. This brings the case within the established principle that the court has jurisdiction in equity to restrain and prevent nuisances. And when the nuisance is a public one, an information by the attorney general is the appropriate remedy. *District Attorney* v. *Lynn & Boston Railroad*, 16 Gray, 242. *Attorney General* v. *Cambridge*, 16 Gray, 247. *Attorney General* v. *Tudor Ice Co.* 104 Mass. 239. 2 Story Eq. Jur. §§ 921–923.

This information, therefore, can be sustained on the ground that the unlawful acts of the defendant will produce a nuisance, by partially draining the pond and exposing its shores, thus endangering the public health.

The defendant contends that the law furnishes a plain, adequate and complete remedy for this nuisance by an indictment, or by proceedings under the statutes for the abatement of the nuisance by the board of health. Neither of these remedies can be invoked until a part of the mischief is done, and they could not, in the nature of things, restore the pond, the land and the underground currents to the same condition in which they are now. In other words, they could not remedy the whole mischief. The preventive force of a decree in equity, restraining the illegal acts before any mischief is done, gives clearly a more efficacious and complete remedy. *Cadigan* v. *Brown*, 120 Mass. 493.

There is another ground upon which, in our opinion, this information can be maintained, though perhaps it belongs to the same general head of equity jurisdiction, of restraining and preventing nuisances. The great ponds of the Commonwealth belong to the public, and, like the tide waters and navigable streams, are under the control and care of the Commonwealth. The rights of fishing, boating, bathing, and other like rights which pertain to the public, are regarded as valuable rights, entitled to the protection of the government. *West Roxbury* v. *Stoddard*, 7 Allen, 158. *Attorney General* v. *Woods*, 108 Mass. 436. *Commonwealth* v. *Vincent*, 108 Mass. 441. If a corporation or an individual is found to be doing acts without right, the necessary effect of which is to destroy or impair these rights and privileges, it furnishes a proper case for an information by the attorney general to restrain and prevent the mischief.

Suppose a city or an aqueduct corporation commences a canal or an aqueduct, without authority from the Legislature, designed to draw off great quantities of the water, and to reduce the size and level of a pond, so as to injure or endanger the rights of the public therein, an information in equity would furnish the only adequate means of asserting and protecting the rights of the government and of the public. The Legislature has the right to determine to what extent the defendant corporation may draw down the waters of Jamaica Pond for the purposes for which it was incorporated.

The information in this case alleges that the necessary effect of the acts of the defendant will be to lower the water below the point limited by the Legislature, and to impair greatly the rights of the public in the pond for the purposes of boating, fishing and other lawful uses. We are of opinion that, upon this ground, it states a case within the equity jurisdiction of this court, as well as upon the ground that the acts of the defendant will produce a nuisance deleterious to the public health.

We are thus brought to the question whether the acts of the defendant, of which the information complains, are *ultra vires* and illegal. This depends upon the construction of the St. of 1868, *c.* 182. The first section of this statute provides that " The Jamaica Pond Aqueduct Corporation is hereby authorized and empowered, for the purpose of better supplying fresh water,

and for saving and restraining the water that may percolate from Jamaica Pond, into what was formerly known as Spring Pond, in land now owned by said corporation, to take, hold or purchase any land near, or adjoining said land, now owned by said corporation, on the northerly side of Perkins Street, and easterly side of Chesnut Street, and may enlarge said pond, formerly called Spring Pond, and raise a dam on said land taken or purchased, to such height as may best serve to save and restrain the water now running to waste from said Spring Pond, the better to save and supply fresh water from said Spring Pond for aqueduct purposes ; but the said corporation are not authorized by this act to take land within fifty feet of any part of the stream that flows from the western side of Pond Avenue or Chesnut Street; provided, that the water of said pond shall never be drawn lower than one foot in the shallowest part, except for the purpose of repairs of the dam, or clearing out the pond."

The defendant contends that, when it took under this statute the land in question, it took the entire fee of the land, and thereby acquired the right which any owner has to sink wells in his land and intercept the underground streams or currents. But this claim cannot be sustained. The uniform rule in Massachusetts is, that when the Legislature delegates to a corporation or person the power to take land of another in the exercise of the right of eminent domain, such corporation or person takes only such estate in the land taken as is necessary to carry out the purposes for which it or he is permitted to take it. This rule is constantly applied in the cases of highways, turnpikes, railroads, canals, aqueducts, sewers, and other like cases. *Harback* v. *Boston*, 10 Cush. 295. *Clark* v. *Worcester*, 125 Mass. 226. It is not necessary that the defendant should have a fee to enable it to carry out all the purposes of the act, and it therefore took only an easement, and the fee remained in the original owner. *Ætna Mills* v. *Brookline*, 127 Mass. 69–72.

The defendant contends that the sinking of wells and constructing hydraulic pumps and other machinery are within the purpose of the Legislature and within the scope of the St. of 1868. In this country, as in England, a grant from the sovereign power is to be construed strictly against the grantee. Nothing will be included in the grant except what is granted

expressly or by clear implication. *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659, 666. *Newton* v. *Commissioners*, 100 U. S. 548. *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446. The St. of 1868 declares the purposes for which the defendant may take such land to be for saving and restraining the water that may percolate from Jamaica Pond into Spring Pond, and by raising a dam on the land taken, to such height as to save and restrain the water now running to waste from Spring Pond, the better to save and supply fresh water from Spring Pond for aqueduct purposes. The object of the statute was to save the water percolating from Jamaica Pond, and by preventing waste from Spring Pond to increase the efficiency of that pond as a source of supply.

There is nothing in the statute which points to the sinking of wells to be used as a source of supply by intercepting the underground currents which help to supply Jamaica Pond, and to establishing hydraulic pumping machinery. The purposes for which the defendant is using the land taken are different from and foreign to the purposes for which it was authorized to take it. Its use of it for such purposes is a perversion of the powers granted it by the Legislature. We are of opinion that the defendant has no authority to use the land taken for the purpose of digging wells and appropriating underground currents. *Bailey* v. *Woburn*, 126 Mass. 416.

The provisions of the second section, giving a remedy to any person whose land or water or water-rights shall be taken or injured, cannot, as contended by the defendant, enlarge the powers granted by the first section; they being merely intended to give a remedy to those who may be injured by the exercise of the power or franchise given in the first section, and not to confer new or additional powers.

Upon the whole case, therefore, we are of opinion that the information states a case within the equity jurisdiction of the court. *Demurrer overruled.*

The case was argued in November 1880, by *M. Williams, Jr.*, for the defendant, and by *R. M. Morse, Jr. & H. L. Harding*, for the plaintiff; and reargued in November 1881, by the same counsel.